# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):** a California Corporation
UNITED BEHAVIORAL HEALTH, (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS) and UNITED HEALTHCARE INSURANCE COMPANY, a Connecticut corporation.

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
JOHN DOE and JANE DOE

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es):
Superior Court of the State of California, County of San Francisco
400 McAllister St., San Francisco, CA 94102

CASE NUMBER:
(Número del Caso): CGC-17-561222

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Anthony F. Maul, The Maul Firm, P.C., 101 Broadway, Suite 3A, Oakland, CA 94607, (718) 395-4918

DATE: September 11, 2017       CLERK OF THE COURT Clerk, by  KALENE APOLONIO        , Deputy
(Fecha) SEP 11 2017                                                                  (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010)*.)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

THE MAUL FIRM, P.C.
Anthony F. Maul (No. 314188)
101 Broadway, Suite 3A
Oakland, CA 94607
Tel: (718) 395-4918
Fax: (929) 900-1710
afmaul@maulfirm.com

PSYCH-APPEAL, INC.
Meiram Bendat (No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

Attorneys for Plaintiffs

FILED
San Francisco County Superior Court
SEP 11 2017
CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JOHN DOE and JANE DOE<br><br>Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH, a California corporation (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS) and UNITED HEALTHCARE INSURANCE COMPANY, a Connecticut corporation,<br><br>Defendants. | Case No. CGC-17-561222<br><br>COMPLAINT FOR:<br><br>1. BREACH OF CONTRACT<br>2. INSURANCE BAD FAITH<br><br><u>DEMAND FOR JURY TRIAL</u> |

COMES NOW, Plaintiffs, John and Jane Doe, both individuals ("Plaintiffs"), by and through their attorneys, to hereby complain and allege against Defendant United Behavioral Health, a California corporation, operating as OptumHealth Behavioral Solutions ("Optum") and United Healthcare

-1-

COMPLAINT

Insurance Company ("UHIC"), a Connecticut corporation (referred to herein, collectively, as "Defendants"), as follows:

## INTRODUCTION

1. The Plaintiffs, who are both public school educators, adopted their daughter (referred to herein as "Laura") from an orphanage in an impoverished African nation when she was six years of age. Laura was born HIV-positive and lost both of her biological parents at an early age to AIDS. She was subsequently placed in an orphanage, where she contracted tuberculosis and lost partial hearing due to an untreated ear infection. Now an adolescent, she has been diagnosed with severe mental illness and a serious emotional disturbance of a child, including Reactive Attachment Disorder, Post-Traumatic Stress Disorder, Disruptive Mood Dysregulation Disorder, and Pervasive Depressive Disorder, much of which is related to the trauma she experienced as a young child.

2. Laura receives health insurance coverage through an employee plan sponsored by the school district that employs her parents. Prior to July 1, 2015, Laura was enrolled in an HMO plan that was underwritten by both UnitedHealthcare of California and U.S. Behavioral Health Plan, California ("USBHPC"). USBHPC is headquartered in San Francisco and is an Optum subsidiary. As of July 1, 2015, Laura was enrolled in a PPO plan that was underwritten by UHIC. At all relevant times, Optum administered mental and behavioral health benefits under both the HMO and PPO plans.

3. In May and June 2015, following years of specialized, multi-disciplinary outpatient treatment, Laura was hospitalized due to a worsening of her conditions that resulted in violence against her parents, self-mutilation and suicidality. Upon her discharge from the hospital, Laura's inpatient and outpatient providers unanimously recommended that she be immediately transferred to residential treatment. In fact, Laura herself did not feel safe returning home.

-2-

COMPLAINT

4. Optum initially approved the request to step Laura down to residential treatment. Indeed, Optum's internal records confirm that Optum's clinical reviewers concluded, in light of Laura's "significant mental health, trauma and medical issues," it was "[a]ppropriate to step mbr [member] down to MHRTC [mental health residential treatment center]." Optum even informed Laura's hospital that it had "approved MHRTC [mental health residential treatment center] at step down with 2 INN [in-network] programs within 60 miles."

5. Unfortunately, when Optum discovered that the in-network facilities it had identified were unwilling to admit Laura due to her HIV status and that Laura's parents identified an out-of-network residential facility specializing in Reactive Attachment Disorder, a chronic condition known to require long-term treatment, Optum brazenly rescinded its prior approval of residential care. Mere days after initially approving such care, Optum now claimed that such care was not medically necessary and was also subject to an illegal coverage exclusion for "long-term residential care."

6. Laura nonetheless entered residential care, with her parents paying out-of-pocket and submitting claims for reimbursement to Optum. Optum persistently denied coverage for Laura's residential care until she was discharged in March of 2017. Laura's parents, who have limited financial means with which to also care for two other adopted, special needs children, have been forced to pay hundreds of thousands of dollars to provide her with the prescribed, desperately needed treatment.

7. When Plaintiffs complained to the California Department of Managed Health Care ("DMHC"), which regulates HMO plans, and the California Department of Insurance ("DOI"), which regulates PPO plans, Optum again asserted its illegal coverage exclusion. Although Optum acknowledged that Laura suffered from a serious emotional disturbance of a child, a chronic and severe condition subject to coverage mandates under California's mental health parity law, it perversely argued to the DMHC that long-term residential treatment for this condition could never be medically

-3-

COMPLAINT

necessary. It also withheld critical evidence from the DOI that it had previously approved residential care for Laura, and that it only rescinded such approval once it was clear there were no in-network facilities available to treat her.

8.  Upon reviewing Laura's case, both the DMHC and DOI concluded that Optum's claimed exclusion of medically necessary "long-term residential care" from coverage is illegal under state and federal mental health parity laws. The DMHC ordered Optum to pay Laura's claims under the HMO plan (through June 30, 2015, for a total of 7 days) with penalty interest. Unfortunately, as detailed below, Optum's misconduct prevented DOI from issuing a similar order. Accordingly, this lawsuit seeks compensation for damages to Laura for improperly withheld benefits under the terms of her PPO plan (i.e. for care she received on and after July 1, 2015).

9.  As set forth more fully herein, Optum's shifting, pretextual denials of coverage for Laura's care were clearly based upon self-interest rather than any good faith rationale. Plaintiffs are therefore entitled to payment of benefits (with interest), special, general and punitive damages, and an award of attorneys' fees and costs.

## THE PARTIES

10.  Plaintiffs John and Jane Doe are a married couple residing in California. Both Plaintiffs are educators employed by a public school district in the same county in which they reside. They are the adoptive parents of Laura and two other young children from the same African nation where Laura was born.

11.  Defendant United Behavioral Health is a California corporation, having its principal place of business in San Francisco, California. United Behavioral Health was responsible for administering the mental and behavioral health benefits at issue in this matter. At all relevant times,

United Behavioral Health operated under the trade name OptumHealth Behavioral Solutions. It routinely does business within the State of California.

12. Defendant United Healthcare Insurance Company, a Connecticut corporation, was the underwriter of the PPO health plan providing Plaintiffs and their family with health insurance coverage. It routinely does business within the State of California.

## JURISDICTION AND VENUE

13. This Court has personal jurisdiction over each of the Defendants because they all transact business within the State of California.

14. This Court has subject matter jurisdiction over this action because the causes of action asserted by Plaintiff arise under the common law and the laws of the State of California. Plaintiffs' claims arise under a fully-insured, non-federal governmental employee benefit plan that is, pursuant to 29 U.S.C. § 1003(b)(1), exempted from regulation under the Employee Retirement Income Security Act of 1974. Accordingly, Plaintiffs' claims are not subject to federal jurisdiction or preemption.

15. Venue is appropriate in this Court because Defendant Optum has its principal place of business in this County.

## GENERAL ALLEGATIONS

16. Plaintiffs adopted Laura from an orphanage in an impoverished African nation when she was six. Laura's birth mother and father both died from AIDS when she was two and four years of age, respectively. Laura was herself born HIV-positive. She was exposed to tuberculosis and has moderate hearing loss due to a ruptured eardrum caused by an untreated infection as an infant. After her father died, she lived in orphanage for two years before being adopted by the Plaintiffs. The Plaintiffs have also adopted two other orphan children with special needs from the same African nation.

17. Laura has been diagnosed with Reactive Attachment Disorder, Post-Traumatic Stress Disorder, Disruptive Mood Dysregulation Disorder, and Pervasive Depressive Disorder, conditions known to be chronic and severe in nature. She struggles with self-mutilation, sexually inappropriate behavior as a result of likely sexual abuse, and suicidality.

18. Despite the Plaintiffs' long-standing efforts to rehabilitate their daughter through outpatient and in-home services, Laura was hospitalized at two different facilities on May 25, 2015 and June 1, 2015, respectively, due to a serious emotional disturbance and severe mental illness that resulted in violence against her parents, self-mutilation, and suicidality. Laura's emotional struggles were further complicated by HIV. Both her outpatient and hospital providers unequivocally recommended residential treatment for her conditions.

19. Prior to Laura's transition to residential care on June 23, 2015, Optum conducted a review to determine whether the requested services were medically necessary and eligible for coverage. On June 16, 2015, Optum's clinical reviewers noted that Laura was "suicidal with plan to jump off bridge, mbr complaining of insomnia, depression, states that medications are not working, states that she's not able to function outside of hospital, anxiety/panic attacks. Family frustrated with mbr's depression, several medication issues." Consequently, the Optum reviewers internally acknowledged that "mbr has significant mental health, trauma and medical issues. *Appropriate to step mbr down to MHRTC.*" One of the Optum reviewers then left messages with two in-network residential treatment centers to confirm their availability. The Optum reviewer also informed Laura's hospital that Optum had "approved MHRTC at step down, with 2 INN programs within 60 miles."

20. Unfortunately, none of the in-network facilities contacted by Optum were willing to accept Laura due to her HIV status and self-harm behaviors. This development prompted a sudden and deplorable shift in Optum's treatment of Laura and the Plaintiffs.

-6-

COMPLAINT

21. Under the terms of both Laura's HMO plan and the requirements of California law, Optum was required to either identify an adequate in-network facility or to refer Laura to an out-of-network facility. Providing coverage for an out-of-network facility, however, would likely prove far more costly than Optum had anticipated when it believed it had identified in-network facilities. Thus, rather than fulfill its obligations to Laura, Optum decided to manufacture a rationale for denying coverage for the care she needed.

22. In a June 23, 2015 letter referencing a pretextual "review" conducted on June 19, 2015 (a mere three days after Optum initially approved residential care for Laura), and in a subsequent appeal letter dated June 24, 2015, Optum denied coverage for residential treatment due to a supposed plan exclusion for "long-term residential care" and due to Laura not meeting medical necessity criteria for *hospitalization*, a level of care to which she did not seek a transfer. While Optum disingenuously recommended "partial hospitalization," a short-term, acute, non-24 hour level of care, contrary to California regulations, it did not identify any partial hospitalization program qualified, willing, and immediately available to admit such a high-risk patient upon hospital discharge.

23. On June 23, 2015, Laura was admitted to an out-of-network, out-of-state residential treatment center specializing in the long-term treatment of children and adolescents with attachment trauma and co-occurring mood disorders. On June 25, 2015, Plaintiffs again appealed Optum's earlier denial of coverage and requested coverage for Laura's care at this out-of-state facility. In a letter dated June 25, 2015, an Optum reviewer stated that "[a]fter fully investigating the appeal, on 6/25/15 I have determined that benefit coverage is not available for the following reasons ... benefits not available for non-emergency services out of state." In a subsequent letter dated June 29, 2015, Optum again denied coverage at the out-of-state facility. This letter similarly based its denial on the fact that the services

were being rendered out-of-state: "Services rendered outside the Service Area are not covered, except Emergency Services or Urgently Needed Services."

24. These letters appeared to withdraw Optum's earlier denial based on a lack of medical necessity. Indeed, neither the June 25 nor June 29, 2015 letters made any mention of the medical necessity of the services in question. Instead, both letters relied exclusively on the purported exclusion of non-emergency out-of-state services under the plan. At the same time, neither letter identified any appropriate in-state providers with immediate availability to treat Laura.

25. In truth, Optum's statement that the plan categorically excluded non-emergency out-of-state services was entirely false. Plaintiffs' HMO plan clearly specified that "if a specialist, Non-Physician Health Care Practitioner or service is unavailable" Optum would refer the member "to a health care Provider outside your medical group."

26. Based on Optum's false representation that out-of-state benefits were categorically excluded for Laura, Plaintiffs promptly switched their enrollment to a PPO plan (which unambiguously provided for out-of-state benefits), effective July 1, 2015.

27. However, when, on August 14, 2015 Plaintiffs attempted to seek pre-authorization for Laura's residential treatment under the PPO plan, Optum could not verify Laura's eligibility for coverage and suggested Plaintiffs call back at a later date. Yet, on September 29, 2015, in reviewing Plaintiffs' post July 1, 2015 claims, Optum perversely noted that "the facility medical record did not indicate an extenuating circumstance for prior authorization/notification not having been obtained."

28. Despite multiple opportunities to right itself, on September 30, 2015, Optum issued an initial denial of coverage for Laura's post July 1, 2015 residential treatment under the PPO plan, again based on a supposed lack of medical necessity. This denial improperly cited criteria for hospitalization, rather than the criteria applicable to the residential treatment Laura was actually receiving. The denial

also indicated that the appropriate level of care for Laura was standard outpatient treatment. This finding was absurd considering that Optum had previously stated that, for effectively the same period of service starting on June 23, 2015, partial hospitalization was an appropriate step-down for Laura as an alternative to residential care. Optum's internal records, however, reveal why Optum no longer recommended even partial hospitalization as a pretextually appropriate alternative: "There are no PHP [partial hospitalization] or IOP [intensive outpatient] services within geo-access." In other words, Optum's decision-making process was dictated entirely by the inadequacy of its network, without any regard for Laura's actual needs. This constituted bad faith.

29. In responding to Plaintiffs' appeal in a letter dated October 19, 2015, Optum upheld its previous denials but again abandoned its insupportable medical necessity rationales and instead relied exclusively on geography to deny coverage. Optum simply responded that it had already informed Plaintiffs on June 25, 2015 that "benefits [were] not available for non-emergency services out of State." Optum further advised Plaintiffs that they had exhausted their appeals with Optum but could seek an Independent Medical Review from the DMHC.

30. Desperate, Plaintiffs requested an Independent Medical Review from the DMHC. The DMHC, which had jurisdiction over Laura's original HMO plan, engaged an Independent Medical Review Organization, MAXIMUS Federal Services, Inc. ("Maximus"). On December 8, 2015, after reviewing Laura's treatment records, Maximus concluded that:

> The medical records document a poor response to over a year of outpatient treatment and at least two acute hospitalizations. Good medical practice would dictate that the patient continue aggressive treatment of a different nature. Therefore, admission to [residential treatment] was appropriate. The Health Plan described her treatment as custodial, stating that she could only make little or no progress with further treatment. However, a review of the progress notes and treatment plan from [the residential treatment facility] shows that the patient is progressing as expected with their treatment plan. The progress note dated 11/12/15 demonstrates that she is now very interested in trying to start over with her family

-9-

COMPLAINT

and build a new relationship. She has developed some insight into the barriers that exist in doing so. This is in contrast to her demeanor before admission to [residential treatment.] Therefore, the requested long-term residential care is considered medically necessary mental health treatment.

31. Subsequently, on August 10, 2016, the DMHC rejected Optum's reliance on the HMO's supposed exclusion of coverage for medically necessary "long-term residential care" as contrary to California's mental health parity law. The DMHC further held that "[t]he available information also indicates that the Plan was unable to provide a sufficiently experienced and qualified contracted facility to treat the enrollee's condition." Accordingly, the DMHC ordered Optum to reimburse Plaintiffs for the residential services provided to Laura from June 23 through June 30, 2015, the dates of service applicable to her HMO coverage.

32. Amazingly, Optum responded to DMHC's directive with defiance. On August 17, 2016, Optum's Deputy General Counsel, Adam Easterday, wrote a letter challenging the DMHC's findings, and contending that "long-term residential treatment" could *never* be medically necessary (for Laura or any other California insured) "because California law specifically excludes long-term care from the definition of residential treatment facilities." This absurd proclamation by Mr. Easterday gives lie to the idea that Optum's medical necessity determinations were based on any clinical assessment of Laura's needs. Instead, it is clear that Optum was determined to deny Laura's request for residential care one way or another. That is the essence of bad faith.

33. On August 31, 2016, the DMHC issued a resolution letter to Plaintiffs stating that: "[Optum] was not in compliance with its obligations under applicable California health plan law with regard to its denial of your request for coverage of services rendered at [the residential facility] from June 23, 2015 through June 30, 2015. Accordingly, your case will be referred to the Department's

Office of Enforcement for further investigation, including the possible assessment of administrative penalties or fines against the health plan."

34. Because the DMHC did not have jurisdiction over Plaintiffs' PPO plan and post-July 1, 2015 claims, in December 2015, the DMHC forwarded Plaintiffs' Independent Medical Review application to the DOI. The DMHC failed, however, to alert the DOI to Maximus' December 8, 2015 finding that the requested residential treatment was medically necessary, or to Optum's continuing reliance on illegal coverage exclusions (for long-term and out-of-state care).

35. In turn, when directed by the DOI to submit a Request for Insurance Coverage Information form along with its internal records, Optum withheld its pre-June 23, 2015 case management records (confirming its agreement that Laura's residential treatment was, in fact, medically necessary) from the DOI. Thus, not only did Optum obscure its unfair and deceptive business practice from the DOI, but it also sabotaged the Independent Medical Review process by depriving the newly assigned Maximus reviewer of critical clinical evidence solely within Optum's possession. As a consequence of Optum's deception, overlooking a crucial letter from Laura's outpatient treatment team describing the failure of outpatient services, and lacking awareness of and a mandate to account for Optum's pretextual treatment recommendations based on network deficiencies, on December 22, 2015, two weeks after Maximus' fulsome DMHC-initiated review, the new Maximus reviewer unwittingly denied Plaintiffs' appeal with respect to her claims under the PPO plan.

36. Indeed, Optum actively concealed the existence of its incriminating pre-June 23, 2015 case management notes from the DOI and Plaintiffs alike. Those records were not revealed until Plaintiffs could locate counsel specializing in mental health insurance law who obtained Optum's Designated Record Set in July of 2016.

37. As a direct result of Defendants' bad faith denial of Plaintiffs' medically necessary residential treatment, Plaintiffs have been forced to pay over $200,000. This ordeal has put untold strain upon their family and finances, including their ability to provide for Laura and Plaintiffs' other adoptive children (who also have extraordinary needs).

38. In an effort to resolve their dispute, on November 8, 2016, Plaintiffs served a settlement demand on Optum, to which Optum never responded. Despite its clear obligation to cover Plaintiff's claims, Optum has, in bad faith, forced Plaintiffs to initiate litigation.

## FIRST CAUSE OF ACTION

### (for Breach of Contract against All Defendants)

39. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

40. At all relevant times, there was a valid and existing insurance agreement between Plaintiffs and the Defendants that required Defendants to pay insurance benefits for all medically necessary health care that was not subject to a valid plan exclusion.

41. Defendants breached the agreement by refusing to pay insurance benefits for covered, medically necessary residential treatment required by Plaintiffs' dependent daughter.

42. Defendants also breached the implied covenant of good faith and fair dealing by engaging in the conduct complained of herein.

43. Plaintiffs suffered damages as a result of Defendants' breach of the insurance agreement, and are entitled to payment of appropriate compensatory and other damages.

44. Plaintiffs have been required to retain the services of legal counsel to commence this action and are entitled to attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### (for Insurance Bad Faith against All Defendants)

45. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

46. The Defendants' conduct as alleged herein, including the Defendants pretextual denials of insurance coverage for medically necessary care, constitute bad faith.

47. Plaintiffs suffered damages as a result of Defendants' actions taken in bad faith, and are entitled to appropriate compensatory damages.

48. Plaintiffs are further entitled to punitive damages as a result of Defendants' bad faith.

49. Plaintiffs have been required to retain the services of legal counsel to commence this action and are entitled to attorneys' fees and costs.

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants as follows:

A. Awarding Plaintiffs unpaid benefits, with interest, in an amount to be determined at trial, which Plaintiffs believes to be in excess of $200,000;

B. Ordering Defendants to pay Plaintiffs special, general and/or punitive damages in an amount to be determined at trial;

C. Awarding Plaintiffs' disbursements and expenses for this action, including reasonable counsel fees, in amounts to be determined by the Court; and

D. Granting such other and further relief as is just and proper.

### JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,
September 11, 2017

Anthony F. Maul (No. 314188)
THE MAUL FIRM, P.C.
101 Broadway, Suite 3A
Oakland, CA 94607
Tel: (718) 395-4918
Fax: (929) 900-1710
afmaul@maulfirm.com

Meiram Bendat (No. 198884)
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

*Attorneys for Plaintiffs*

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Anthony F. Maul (No. 314188)<br>The Maul Firm, P.C.<br>101 Broadway, Suite 3A<br>Oakland, CA 94607<br>TELEPHONE NO.: (718) 395-4918   FAX NO.: (929) 900-1710<br>ATTORNEY FOR (Name): John Doe and Jane Doe | **FILED**<br>San Francisco County Superior Court<br>SEP 11 2017<br>CLERK OF THE COURT<br>BY: _____ Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
John Doe, et al. v. United Behavioral Health, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited   ☐ Limited<br>(Amount demanded exceeds $25,000)   (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CGC-17-561222<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

   **Auto Tort**
   ☐ Auto (22)
   ☐ Uninsured motorist (46)
   **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
   ☐ Asbestos (04)
   ☐ Product liability (24)
   ☐ Medical malpractice (45)
   ☐ Other PI/PD/WD (23)
   **Non-PI/PD/WD (Other) Tort**
   ☐ Business tort/unfair business practice (07)
   ☐ Civil rights (08)
   ☐ Defamation (13)
   ☐ Fraud (16)
   ☐ Intellectual property (19)
   ☐ Professional negligence (25)
   ☐ Other non-PI/PD/WD tort (35)
   **Employment**
   ☐ Wrongful termination (36)
   ☐ Other employment (15)

   **Contract**
   ☐ Breach of contract/warranty (06)
   ☐ Rule 3.740 collections (09)
   ☐ Other collections (09)
   ☑ Insurance coverage (18)
   ☐ Other contract (37)
   **Real Property**
   ☐ Eminent domain/Inverse condemnation (14)
   ☐ Wrongful eviction (33)
   ☐ Other real property (26)
   **Unlawful Detainer**
   ☐ Commercial (31)
   ☐ Residential (32)
   ☐ Drugs (38)
   **Judicial Review**
   ☐ Asset forfeiture (05)
   ☐ Petition re: arbitration award (11)
   ☐ Writ of mandate (02)
   ☐ Other judicial review (39)

   **Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
   ☐ Antitrust/Trade regulation (03)
   ☐ Construction defect (10)
   ☐ Mass tort (40)
   ☐ Securities litigation (28)
   ☐ Environmental/Toxic tort (30)
   ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
   **Enforcement of Judgment**
   ☐ Enforcement of judgment (20)
   **Miscellaneous Civil Complaint**
   ☐ RICO (27)
   ☐ Other complaint (not specified above) (42)
   **Miscellaneous Civil Petition**
   ☐ Partnership and corporate governance (21)
   ☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): 1. Breach of Contract; 2. Insurance Bad Faith
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: September 11, 2017

_____    ▶ _____
(TYPE OR PRINT NAME)               (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                                CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
  Auto (22)–Personal Injury/Property Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business Practice (07)
  Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel) (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
  Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non- domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non- harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition